**In re William Harvey STILL, Debtor.**

**Stanley WRIGHT, Trustee, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Successor in Interest to the First State Bank of Abilene, Defendant.**

**Bankruptcy No. 188–10285–7.**
**Adv. No. 189–1036.**

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

April 23, 1990.

Thomas M. Wheeler, Abilene, Tex., for trustee.

Charles A. Beckham, Jr., Kemp, Smith, Duncan & Hammond, El Paso, Tex., for FDIC.

## MEMORANDUM OF OPINION ON PREFERENCE

JOHN C. AKARD, Bankruptcy Judge.

By urging that it is protected under § 550(b)(1) of the Bankruptcy Code,[1] the Federal Deposit Insurance Corporation (FDIC) as the Receiver of First State Bank of Abilene, Abilene, Texas (FSB) seeks to prevent the Trustee's recovery of a preferential transfer. The court finds that the FDIC does not qualify as a transferee under that section and, therefore, orders the transfer avoided as requested by the Trustee.

### Facts

On August 20, 1987, FSB filed a suit against William Harvey Still (Still) in the District Court of Taylor County, Texas. On June 3, 1988 judgment was entered in favor of FSB for $228,361.50, plus interest and attorneys' fees. On July 29, 1988, FSB filed for writs of garnishment against several parties. Prior to Still's bankruptcy, answers were filed to the garnishment action admitting monies owed to Still as follows:

| Garnishee | Total Outstanding Balance Owing | Monthly Installment Due When Writ Was Served |
|---|---|---|
| 1. Anna M. Whittlesey | $ 8,847.07 | $150.00 |
| 2. Samuel and Catherine Moreman | $30,903.64 | $324.00 |
| 3. Ken Whittlesey | $ 8,847.07 | $150.00 |
| 4. Security State Bank | $ 4,030.73 (plus a joint account without the right of survivorship in the name of Still's deceased wife in the amount of $1,492.82) | |

The debts owed to Still by the Whittleseys and the Moremans are evidenced by installment promissory notes which had not fully matured when the Writ of Garnishment was served. The installment notes are not contingent and are liquidated. The balances of the installment notes are sums certain.

On August 26, 1988, Still filed for relief under Chapter 7 of the Bankruptcy Code. On December 2, 1988, FSB filed a Proof of Claim for $308,334.24 based upon the judgment. On February 17, 1989, the Comptroller of the Currency declared FSB insolvent, and the FDIC was appointed Receiver of FSB. On August 18, 1989, Stanley Wright, the Trustee, objected to FSB's claim and filed this Adversary Proceeding August 23, 1989.

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

## DISCUSSION

The parties agree that FSB's garnishment satisfies all of the elements of a preferential transfer under § 547(b). If a transfer is avoided under § 547, under § 550(a) the trustee may recover for the benefit of the estate the property transferred. An exception to the trustee's right to recover is contained in § 550(b)(1) which provides that the trustee may not recover from "a transferee that takes for value, including satisfaction or securing a present antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." The FDIC relies on *Osherow v. First RepublicBank San Antonio (In re Linen Warehouse, Inc.)*, 100 B.R. 856 (Bankr.W.D.Tex.1989).

The FDIC is accorded (in its corporate capacity and, to a lesser extent, in its capacity as a receiver), protections which would not be available to other parties. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C. § 1823(e) (1989). The object of the *D'Oench, Duhme* rule is to protect the FDIC from secret agreements between the borrower and the lender which would destroy the value of the assets of a failed bank when those assets are turned over to the FDIC. *Bell & Murphy and Assoc. v. Interfirst Bank Gateway*, 894 F.2d 750 (5th Cir.1990); *Thistlethwaite v. FDIC (In re Pernie Bailey Drilling Co.)*, 111 B.R. 565 (Bankr.W.D.La.1990).

FSB's garnishment was an action filed in the State District Court of Taylor County, Texas. Still's bankruptcy was filed in this court. 12 U.S.C. § 1823(e) as amended in 1989 covers the FDIC both in its corporate and receivership capacities. Prior to this amendment, the section referred only to the FDIC in its corporate capacity. *FDIC v. McClanahan*, 795 F.2d 512, 516 (5th Cir.1986). 12 U.S.C. § 1823(e) relates only to an "agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it...." *Id.* at 516. There is no secret agreement or agreement of any nature involved in this proceeding.

The FDIC has the status of a holder in due course if it took the asset in good faith and without knowledge of personal defenses. *Sunbelt Savings Association of Texas v. Amercorp Realty Corp.*, 730 F.Supp. 741 (N.D.Tex.1990). Therefore, the FDIC must establish all of the elements of § 550(b) in order to take advantage of that exception. *La Mancha Aire, Inc. v. FDIC (In re La Mancha Aire, Inc.)*, 41 B.R. 647 (Bankr.S.D.Fla.1984).

### *Transferee*

The FDIC asserted that it is a transferee of FSB, citing the broad definition of transfer in § 101(50) which includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." "When the FDIC is functioning as receiver of a state bank it is not entitled to the protections of the FDIC in its corporate capacity, acting as insurer of a failed bank. If the FDIC took over the Bank as receiver, the FDIC merely steps into the bank's shoes and can only assert the same defenses available to the bank." *Evans v. Robbins (In re Robbins)*, 91 B.R. 879, 889 (Bankr.W.D.Mo.1988).

The FDIC shall be appointed as receiver and shall accept such appointment whenever a receiver is appointed for the purpose of liquidation or winding up the affairs of a failed bank by the appropriate federal banking agency. 12 U.S.C. § 1821(c)(2)(A)(ii). The FDIC as receiver succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). Thus, the FDIC succeeds to the assets of the failed institution, but there is no "transfer" even within the broad definition of that term in § 101(50) of the Bankruptcy Code. It is well known that receivers are appointed by statute or by a court and clearly Congress could have included the acquisition of title

by a receiver within the definition of transfer if it had chosen to do so.

### Value

■ The FDIC does not point to any value that it paid for FSB's assets. A receiver does not pay value; a receiver takes the assets and liquidates them for the benefit of the creditors of the failed institution. "The FDIC as receiver, quite unlike the FDIC in its corporate capacity when it enters a purchase and assumption agreement, does not give up anything. It does not pay for assets of a failed bank or assume any liabilities." *Pernie Bailey, supra.*

The fact that the FDIC in its corporate capacity may have provided insurance to some of the depositors of FSB does not constitute value, because the FDIC in that capacity would be subrogated to the rights of the depositors whom it pays from its insurance fund and would have a claim against the monies collected by the receiver through liquidation.

### Good Faith

The Bankruptcy Code does not define good faith, but it has been construed to mean whether the transferee knew or should have known that the purpose of the trade was to defraud the debtor's creditors. *Robbins, supra* at 884, 886 (citing 4 *Collier on Bankruptcy* p. 550-9 (15th Ed.1987)). The appointment of a receiver is not the type of transaction designed to defraud the debtor's creditors and, thus, the FDIC should be presumed to be in good faith.

### Without Knowledge of the Voidability of the Transfer Avoided

The FDIC asserted that it took these assets under a statutory duty and, thus, it had no knowledge of anything concerning any of the assets until it had taken possession of them.[2] Undoubtedly in passing

§ 550(b) Congress had in mind a standard business transaction where a purchaser would make a reasonable inquiry before acquiring an asset. Clearly such a purchaser would be on notice of the garnishment suit and of the bankruptcy filing because both are matters of public record. Any prospective purchaser would review the bank's records which would reflect the existence of the bankruptcy because the bank filed a claim in the bankruptcy proceedings. Thus, anyone purchasing this asset (the claim in the garnishment proceeding) would be on notice, and thus would be considered to have knowledge, of the trustee's avoiding powers. The court finds that the FDIC had such knowledge.

### Improvement of Position

The trustee points out that § 362 prohibits all entities from taking various acts to enforce, perfect, or create liens against property of the estate. The garnished funds are property of the estate until the garnishment judgment becomes final or, if the garnishment judgment became final prior to the filing of the bankruptcy petition, the transfer is subject to being set aside under the trustee's avoiding powers. The trustee does not object to the FDIC succeeding to FSB's claims, but feels that any attempt by the FDIC to assert that it has an improved position over FSB would constitute a violation of the § 362 automatic stay and, therefore, would be void. Such a literal reading of § 362 would make § 550(b) a nullity, but there is credence to the argument where the FDIC has knowledge of bankruptcy. In this case the FDIC had such knowledge from FSB's files as well as from the public records.

### Conclusion

Both the garnishment and the bankruptcy were matters of public record and were undoubtedly reflected in FSB's files. They

---

**2.** This might be referred to as the "blindfold" theory. The FDIC asserted that if in some way it had actual knowledge prior to the failure of FSB, then it might have taken with knowledge. What does the FDIC mean? Would this lead to a situation where every time one files an action against a bank the FDIC should be made a party, even though the bank is thought to be solvent? Does this mean that every time a bankruptcy is filed, notice of the filing should be sent to the FDIC in the event that it should later be appointed receiver of a bank creditor? This theory is obviously impractical.

do not constitute the types of secret agreements which *D'Oench, Duhme* and 12 U.S.C. § 1823(e) are designed to overcome. Further, the FDIC in its capacity as a receiver is not a transferee within the terms of § 550(b). The Trustee–in–Bankruptcy is entitled to a judgment for the preferential transfer described in his pleadings.